**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 24 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ALLSTATE INSURANCE
COMPANY,

     Plaintiff-Counter-Defendant-
Appellee,

v.

STEVEN FOX,

     Defendant

and

BOBBY HOLLAND, individually and
as mother and next of kin of Bobby
Edward Phelps, deceased,

     Defendant-Counter-Claimant-
Appellant.

No. 96-6411
(D.C. No. CIV-94-1381)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Before **SEYMOUR**, Chief Judge, **LOGAN,** Senior Judge, and **MURPHY,** Circuit Judge.

———————————————

Allstate Insurance Company brought this declaratory judgment action against Stephen Fox and Bobby Holland, asserting that it had no duty either to defend or to provide coverage under two Allstate policies insuring Stephen Fox. The action was in response to a state court suit filed by Bobby Holland against Mr. Fox for the wrongful death of her son, Bobby Phelps. The parties consented to proceed before a federal magistrate judge, who entered summary judgment for Allstate. Bobby Holland appeals and we affirm.

The underlying facts are briefly as follows. Stephen Fox and Jerry Byrum were traveling in Fox's vehicle on a highway beside a car driven by decedent Bobby Phelps. Mr. Fox, who was driving, cut in front of Mr. Phelps' car and then chased Mr. Phelps to a parking lot where Mr. Phelps stopped his vehicle. Mr. Fox, Jerry Byrum, and Mr. Phelps got out of their cars. Mr. Fox gave Mr. Byrum a baseball bat that Mr. Fox kept in his car, and Mr. Byrum struck Mr. Phelps in the head with it, killing him.

Mr. Fox was insured under two Allstate policies, an automobile insurance policy issued to his father, and a homeowner's policy issued to both parents. The homeowner's policy provided coverage for "damages which an insured person becomes legally obligated to pay because of bodily injury . . . arising from an

-2-

accident." Aplt. App. at 132. The automobile insurance policy provided coverage for bodily injury arising from the use of an insured auto but extended that coverage only to bodily injury resulting from an accident. Id. at 174. The magistrate judge ruled that coverage was not available under either policy because the death was not an accident within the meaning of the policy language.

Our consideration of this appeal is governed by our decision in Farmers Alliance Mut. Ins. Co. v. Salazar, 77 F.3d 1291 (10th Cir. 1996), which addressed circumstances similar in relevant respects. There, as here, we were required to determine, under Oklahoma law, whether bodily injury was the result of an accident when the insured gave a third person a weapon and that person's intentional use of the weapon resulted in death. In Salazar, Ofelia Salazar and her son Manuel were insured under a homeowner's policy providing coverage for bodily injury resulting from an accident. Although Ofelia knew Manuel carried a revolver and tended to threaten people with it, she did not attempt to take the gun from him or to control his use of it. Ofelia gave her other son an automatic weapon and was present when Manuel took the automatic from his brother. Manuel subsequently gave the revolver to his friend Jacob De LaCruz. Manuel and Jacob were in a car carrying their weapons when Manuel began an altercation with the occupants of another car by giving a gang signal with his hand. Ultimately, Manuel and Jacob each fired at least one shot at the other car and a

bullet from the revolver killed the driver. Manuel and Jacob were both convicted of first degree murder. See id. at 1293-94.

The driver's estate sued Ofelia and Manuel, and Farmers brought a declaratory judgment action to determine the coverage limits of the homeowner's policy. In determining whether the death was the result of an accident, we held the operative event was the firing of the gun that killed the decedent, not Ofelia's negligent supervision of Manuel or Manuel's negligent entrustment of the gun to Jacob. We held the death was not an accident under Oklahoma law, which defined an accident as "'an event from an unknown cause, or an unexpected event from a known cause. An unusual event and unexpected result, attending the performance of a usual or necessary act.'" Id. at 1297 (quoting United States Fidelity & Guar. Co. v. Briscoe, 239 P.2d 754, 757 (Okla. 1951) (per curiam)). Our holding in Salazar that the injury there was not an accident, under circumstances analogous to those before us, requires the same conclusion here.

Bobby Holland relies on Penley v. Gulf Ins. Co., 414 P.2d 305 (Okla. 1966), in contending the death here was an accident. In that case, however, the court held the occurrence at issue was an accident because the act that caused the injury was done mistakenly, without any intent to inflict damage. Id. at 309-10. Here, the act at issue, swinging and striking another with a baseball bat, was clearly done intentionally. While the exact nature of the injury may not have been

intended, it was not unusual or unexpected and was therefore not an accident under the Oklahoma law set out above.

Ms. Holland's attempt to distinguish <u>Salazar</u> fails for the same reason. She argues that Mr. Byrum was only convicted of manslaughter, a crime that does not require proof of an intent to injure or kill, while the actors in <u>Salazar</u> were both convicted of first degree murder. In our view, the fact that an intent to injure may not be required for Mr. Byrum's manslaughter conviction is irrelevant to determining whether there was an accident for insurance purposes. The injury that occurred here was the foreseeable result of Mr. Bryum's decision to hit the decedent with the bat and, as discussed above, therefore not accidental.[1]

Accordingly, the judgment is **AFFIRMED**.

ENTERED FOR THE COURT

Stephanie K. Seymour
Chief Judge

---

[1] Ms. Holland relies extensively on <u>First Bank of Turley v. Fidelity & Deposit Ins. Co.</u>, 928 P.2d 298 (Okla. 1996), in arguing that Allstate has a duty to defend which is broader than its duty to indemnify. <u>First Bank</u> concerned a suit brought by an insured for breach of the duty to defend and specifically recognized that when faced with a demand to defend, an insurer may do what Allstate did here and seek declaratory relief defining its rights and obligations. <u>Id.</u> at 304. Accordingly the case is inapposite. Ms. Holland's reliance on our decision in <u>Allstate Ins. Co v. Worthington</u>, 46 F.3d 1005 (10th Cir. 1995), is also unavailing as that case was expressly based on our view of Utah law. <u>Id.</u> at 1010.